657 So.2d 1125 (1995)
Shannon LOGAN
v.
PERSONNEL BOARD OF JEFFERSON COUNTY.
AV93000655.
Court of Civil Appeals of Alabama.
January 6, 1995.
On Application for Rehearing March 17, 1995.
*1126 Jeffrey W. Bennitt of Kizer, Bennitt & Gonzalez, Birmingham, for appellant.
Laveeda Morgan Battle and Mark T. Waggoner of Gorham, Stewart, Kendrick, Bryant & Battle, P.C., Birmingham, for appellee.
John M. Edens, City of Birmingham Law Dept., Birmingham, for amicus curiae City of Birmingham.
SAM A. BEATTY, Retired Justice.
Following a random drug screening, Shannon Logan was discharged from his employment with the Birmingham Fire and Rescue Service for having tested positive for marijuana. He appealed to the Jefferson County Personnel Board, which affirmed the dismissal. From that action, Logan appealed to a three-judge circuit court panel; that panel remanded the cause to the Personnel Board "for the purpose of giving the Birmingham Fire & Rescue Service an opportunity to establish by competent evidence the chain of custody of the lab report involving the urine sample taken from Shannon R. Logan." Following a hearing, the Personnel Board found that the City of Birmingham had established by a "reasonable probability" that the sample was maintained intact throughout its chain of custody, and it again sustained Logan's termination. Logan again appealed to the circuit court. That panel found that there was a "reasonable probability" that the drug test was reliable and found "substantial and legal evidence" to support the Personnel Board's decision. This appeal followed.
In establishing the chain of custody, an employee of the American Family Care Clinic, Linda Rooker, who collects the urine samples for the City, explained extensively the procedures used to collect samples and the safeguards used to protect their integrity. She stated that clinic employees document the chain of custody for each sample collected using a five-part form provided by Roche Biomedical Laboratories, the company that performs the drug testing. Attached to the top copy of each form are two bar-coded stickers used to seal the specimen bottle. The form contains bar codes identical to those on the stickers. Ms. Rooker testified that she placed the "chain of custody" bar-coded seals that came from the form provided by Roche across the top and around the side of Logan's specimen, and that she placed the specimen in a tamper-proof bag sealed with adhesive substances that will indicate any tampering. She affirmed that all the proper steps were followed when Logan submitted his sample. She also stated that she executed the "chain of custody" document as the attendant at the collection site, verifying that the "specimen has been received from the donor, sealed for transport, and sent to the laboratory by: `RBL [Roche Biomedical Laboratories] Courier.'" Ms. Rooker then explained that following the collection of the specimen, the proper measurements for temperature and amount were performed and that the sealed bag was then placed in a box provided by the laboratory in a secure place, where no patient had access, to await pickup by Roche's courier.
Dr. Walter Wright, Ph.D., Director of Toxicology for Roche Biomedical Laboratories, oversees the drug testing for Roche. In that capacity, Dr. Wright reviews test results and ensures that the testing procedures were conducted properly. In testifying about the procedures, he explained that each sample forwarded to Roche is received by an accessioner[1] in a secure area. He testified that Logan's sample was delivered by the laboratory's courier on the same day it was collected; that the accessioner reviewed the sample and matched the identifying marks on the "chain of custody" form with the identifying marks on the specimen bottle, and that by her signature, the accessioner verified that both seals were intact, that all identifying marks were in place, and that there were no signs of tampering.
Logan argues that because the courier who transported the sample from the collection site was not named and was not identified *1127 other than as "courier," the chain of custody was not established. This court disagrees with that conclusion.
In Green v. Alabama Power Co., 597 So.2d 1325, 1328 (Ala.1992), quoting Ex parte Williams, 505 So.2d 1254, 1255 (Ala.1987), our supreme court stated:
"`"The evidence need not negate the most remote possibility of substitution, alteration, or tampering with the evidence, but rather must prove to a reasonable probability that the item is the same as, and not substantially different from, the object as it existed at the beginning of the chain." Slaughter v. State, 411 So.2d 819, 822 (Ala. Cr.App.1981) (emphasis supplied).'"
Cf. Snowden v. State, 574 So.2d 960 (Ala. Crim.App.1990) (court found sufficient continuity in the chain of custody of biological samples from a rape victim where the specimen collector testified that the package was "picked up at the laboratory by either Federal Express or United Parcel Service"). See also Moorman v. State, 574 So.2d 953 (Ala. Crim.App.1990) (court held that the chain of custody was established where nurse-collector testified that "[s]omebody from the lab picked [the sample] up"). This court concludes that the facts in this cause satisfy the tests of those authorities. Given the intact bar-coded seals, the sealed tamper-proof bag, the protective box, and the matching of the identifying marks on the custody form with the marks on the specimen bottle, and given that there were no signs of tampering, this court must conclude that there was at least a "reasonable probability" that the item was the same.
Logan also contends that no medical review officer reviewed the positive test results, as is required by the applicable regulations. The circuit court panel found otherwise. We quote from its opinion:
"The chain of custody issue was the only issue before the Board on remand. Furthermore, Linda Rooker in her testimony referred to Irwin (Dr. Bruce Irwin, the medical review officer), as one of the doctors with whom Logan discussed the test results and the possibility of second-hand smoke being the cause of a positive test finding. The copy of the lab report in evidence bears Dr. Irwin's initials."
Those findings comport with the requirements of § 2.7(a) and (b) of the applicable regulations pertaining to medical review. Mandatory Guidelines for Federal Workplace Drug Testing Programs, App. B-2, 53 Fed. Reg. 11985 (1988).
Let the judgment be affirmed.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.

ON APPLICATION FOR REHEARING
SAM A. BEATTY, Retired Justice.
On application for rehearing, Logan argues for the first time that the circuit court erred on the issue of medical review when it stated that Linda Rooker's testimony referred to Dr. Bruce Irwin. Logan claims that the record contains no evidence concerning a "proper" medical review.
Appellate review of a decision rendered by a three-judge circuit court panel comes before this court by way of certiorari. Holloway v. Personnel Bd. of Jefferson County, 528 So.2d 341, 342 (Ala.Civ.App. 1988). Although Logan filed a notice of appeal from the panel's decision, we have treated that appeal as a petition for writ of certiorari. Id. On certiorari, our review is limited to the consideration of whether the circuit court properly applied the law and whether the decision is supported by any legal evidence. Id.
Logan is correct that Linda Rooker does not refer to Dr. Irwin in her testimony. Nevertheless, if there was any evidence to support the panel's decision, this court must affirm. As the panel noted, the evidence included a copy of the lab report bearing Dr. Irwin's initials. Also introduced into evidence were notes made by Dr. Irwin's nurse from a telephone conversation with Logan. *1128 The panel's mistake regarding Rooker's testimony does not alter this court's conclusion that the panel properly applied the law in this case and that its decision was supported by legal evidence. In light of our standard of review, we see no reason to grant rehearing in this case based upon the medical review issue.
None of the other contentions asserted by Logan in his application for rehearing have merit, and, therefore, his application for rehearing is hereby overruled.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
All the Judges concur.
NOTES
[1] Dr. Wright explained that the "accessioner" is the laboratory employee who receives a specimen in a sealed container, matches the "chain of custody" information against the specimen, and, if everything is in order, opens the bottle and removes the contents for testing.