JOINER, Judge,
concurring in the result (as substituted on denial of application for rehearing on December 18, 2015).
Richard Lamar Bolden was convicted of trafficking in marijuana, see § 13A-12-231, Ala.Code 1975, and was sentenced, as a habitual felony offender, to life imprisonment. In the Houston Circuit Court, Bol-den filed a motion to suppress evidence seized from his Eddins Road residence because, he said, among other things, the affidavit supporting the search warrant “failed to state that 1). Anyone saw defendant in possession of marijuana at the [Eddins Road residence] or 2). That anyone saw defendant in possession of an assault rifle at the [Eddins Road residence] or 3). When the reported information was observed or obtained.” (C. 61.) After conducting a suppression hearing, at which only one witness — Officer Ray Mock — testified, the circuit court denied Bolden’s motion to suppress. Thereafter, *745 Bolden proceeded to trial and was convicted of trafficking in marijuana.
On appeal, Bolden challenges the circuit court’s decision to deny his motion to suppress. Specifically, Bolden argues:
“[T]he affidavit underlying the search warrant was constitutionally deficient on the grounds that it did not include information that specified when the confidential informant learned the information that he/she reported to Officer Ray Mock with the Dothan Police Department.”
(Bolden’s brief, p. 14.)
The main opinion rejects Bolden’s claim, holding:
“Applying the ‘totality-of-the-eircum-stances’ test set out in Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), to the instant case, we conclude that there was sufficient probable cause and specificity in the affidavit for .the issuance of the search warrant in this case. Officer Mock received information from a confidential informant. This information led to a search warrant that produced significant quantities of marijuana and cocaine. Afterward, officers obtained an arrest warrant for Bolden. Officers then learned that Bolden was driving a green Chevrolet Impala. Bolden and the green Chevrolet Impala were seen at the Eddins Road residence, and officers began surveillance of the vehicle and the residence. Within 24 hours of obtaining a search warrant, Officer Mock learned from a reliable confidential informant that Bolden possessed an assault rifle with a high-capacity drum-style magazine. Because the affidavit was based on the personal observations of Dothan police officers and a confidential informant with a proven track record of veracity and reliability, there was sufficient evidence disclosed to the issuing judge to sustain the finding that probable cause to search the Eddins Road residence existed at the time the search warrant was issued.”
205 So.3d at 743 (emphasis added).
Although I agree with Judge Welch’s conclusion in his dissenting opinion that the search warrant for the Eddins Road residence was not supported by sufficient probable cause and should not have been issued, the main opinion correctly concludes, albeit alternatively, that, under the good-faith exception, “the extreme sanction of exclusion is inappropriate” in this case. United States v. Leon, 468 U.S. 897, 926, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).
In Leon, the United States Supreme Court recognized a good-faith exception to an-.otherwise invalid search warrant, explaining that “the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges,” 468 U.S. at 916, and “[pjenalizing the officer for the [judge’s] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.” Id. at 921.
This Court has'adopted the good-faith exception and has explained:
“ ‘The good faith exception provides that when officers acting in good faith, that is, in objectively reasonable reliance on a warrant issued by a neutral, detached magistrate, conduct a search and the warrant is found to be invalid, the evidence need not be excluded.’ Rivers v. State, 695 So.2d 260, 262 (Ala.Crim.App.1997).
. “In United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), a case relied on by the circuit court, the United States Supreme Court recognized four circumstances in which the good-faith exception was inapplicable: (1) when the magistrate or judge *746 relies on information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) when the magistrate wholly abandons his judicial role and fails to act in a neutral and detached manner; (3) when the warrant is based on an affidavit so lacking an indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid.”
Bailey v. State, 67 So.3d 145, 149-50 (Ala.Crim.App.2009). “In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.” Leon, 468 U.S. at 926 (emphasis added).
Here, there is no allegation that the circuit judge who issued the search warrant for the Eddins Road residence had “abandoned his detached and neutral role.” Moreover, nothing in the record suggests, and Bolden does not contend, that Officer Mock was either “dishonest or reckless in preparing [his] affidavit.” Thus, in this case, “suppression is appropriate only if ... [Officer Mock] could not have harbored an objectively reasonable belief in the existence of probable cause.” Leon, 468 U.S. at 926 (emphasis added). The test to determine whether a law-enforcement officer has “an objectively reasonable belief in the existence of probable cause” is whether “no reasonably well trained police officer could have believed that there existed probable cause” to issue the search warrant. Leon, 468 U.S. at 926, 104 S.Ct. 3405 (emphasis added).
The Supreme Court explained that when an officer’s “application for a warrant clearly [is] supported by much more than a ‘bare bones’ affidavit” and the affidavit “provide[s] evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause,” an “officer’s reliance on the [judge’s] determination of probable cause [is] objectively reasonable.” Leon, 468 U.S. at 926. Although Judge Welch dismisses this test as nothing more than a “comment made by the Leon Court,”[1] 205 So.3d at 756 (Welch, J., dissenting), a majority of the United States Circuit Courts of Appeals that have addressed this question disagree with his position. See United States v. Butler, 763 F.2d 11, 14 (1st Cir.1985) (“Where ‘evidence [is] sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause,’ it cannot be said that the police officers, providing a truthful affidavit to a neutral magistrate, who then issued a warrant, were not objectively reasonable in believing that they had probable cause.”); United States v. Fama, 758 F.2d 834, 838 (2d Cir.1985) (“The affidavit ‘provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. Under these circumstances, the officers’ reliance on the [judge’s] determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate.’”); United States v. Harris, 6 Fed.Appx. 304, 308 (6th Cir.2001) (not selected for publica *747 tion in the Federal Reporter) (“The evidence indicates that, at the very least, the police affidavit ‘provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause.’ ... Accordingly, the good faith exception is applicable here.”); United States v. Martin, 833 F.2d 752, 756 (8th Cir.1987) (“When judges can look at the same affidavit and come to differing conclusions, a police officer’s reliance on that affidavit must, therefore, be reasonable.”); United States v. Tate, 795 F.2d 1487, 1491 (9th Cir.1986) (“Similarly, in this case the evidence in the affidavit was sufficient to create disagreement among the judges. Under such circumstances, the Supreme Court has clearly stated that exclusion of the evidence is not generally justified.” (footnote omitted)); and United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir.1993) (“A corollary to the presumption in favor of good faith reliance upon warrants is that ‘police officers should be entitled to rely upon the probable-cause determination of a neutral magistrate when defending an attack on them good faith for either seeking or executing a warrant’ particularly where, ‘with the benefit of hindsight and thoughtful reflection, reviewing judges still cannot agree on the sufficiency of the affidavit.’ [United States v.] Corral-Corral, 899 F.2d [927,] 939 [ (10th Cir.1990) ] (citation omitted).”). This majority position is logical given that
“[i]t is the [judge’s] responsibility to determine whether the officer’s allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the [judge’s] probable-cause determination or his judgment that the form of the warrant is technically sufficient. ‘[0]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.’ [Stone v. Powell], 428 U.S., [465] at 498 [ (1976) ] (BURGER, C.J., concurring).”
Leon, 468 U.S. at 921.
Here, the affidavit supporting the search warrant, although in my assessment lacking sufficient probable cause, was clearly not a “bare bones” affidavit and was not “so lacking an indicia of probable cause” that “no reasonably well trained police officer could have believed that there existed probable cause” to issue the search warrant. Indeed, Officer Mock’s affidavit provided extensive detail regarding the circumstances leading to the issuance of a search warrant for Bolden’s Bruce Street residence; the items recovered from that residence, including cocaine in excess of 28 grams, marijuana, “$1,554 in U.S. currency,” a semi-automatic handgun, and “other packaging material” (C. 73); that Bolden was not at the Bruce Street residence when the search warrant was executed; and that Officer Mock had obtained arrest warrants for Bolden for trafficking in cocaine and first-degree possession of marijuana.
Additionally, the affidavit explained that Officer Mock had spoken with a confidential informant who told him that the confidential informant had seen Bolden driving a “dark green 'Chevrolet Impala.” (C. 73.) Furthermore, Officer Mock attested that, on the day the affidavit was executed, Sergeant Jason Adkins spoke with a confidential informant who told Sergeant Adkins that Bolden had a second residence on Eddins Road and gave Sergeant Adkins directions to that residence.
According to Officer Mock,- Sergeant Adkins went to the Eddins Road residence and saw a “dark green Chevrolet Impala parked in the yard” and, at that time, *748 several law-enforcement officers began to conduct surveillance on the Eddins Road residence. Officer Mock explained that, during the surveillance, Sergeant Adkins saw Bolden and Shawnda Owens leave the Eddins Road residence and drive off in a Ford Focus automobile. Thereafter, according to Officer Mock, law enforcement conducted a traffic stop on the Ford Focus and Bolden “got out of the car and attempted to run away.” (C. 73.) Officer Mock also detailed his narcotics training and experience and explained that he knows that “illegal drug traffickers take many steps to disguise their business and to hide their drugs and cash proceeds. It is common for drug traffickers to keep their money and drugs separated, many times at different residences. It is also common for drug traffickers to keep written records of their transactions (drug ledgers).” (C. 74.) Additionally, Officer Mock explained that, on the day he signed the affidavit, a reliable confidential informant stated that “Bolden possesses an assault rifle with a high capacity drum magazine” and “[t]he rifle was not found at the” Bruce Street residence.
Although in his dissent Judge Welch concludes that the facts presented in Officer Mock’s affidavit are so lacking an indi-cia of probable cause that no reasonably well trained police officer could have believed that there existed probable cause to issue the search warrant, some members of this Court believe that the affidavit does set out sufficient probable cause to support the issuance of a search warrant in this case. When members of the Alabama Court of Criminal Appeals conclude that there is sufficient probable cause to support the issuance of the search warrant in this case, how can we conclude that no reasonably well trained police officer could have believed that the affidavit articulated sufficient probable cause for the issuance of a search warrant? To hold that the good-faith exception does not apply when, with time to reflect on the search warrant and affidavit, the members of this Court cannot agree on the existence of probable cause is nonsensical.
Thus, although I agree with Judge Welch’s position that Officer Mock’s affidavit lacked sufficient probable cause for the issuance of the search warrant, controlling caselaw requires me to also conclude that the good-faith exception applies under the circumstances of this case. Specifically, Officer Mock had an “objectively reasonable belief in the existence of probable cause.”
Because there are no allegations in this case that the circuit judge had “abandoned his detached and neutral role” or that Officer Mock was either “dishonest or reckless in preparing [his] affidavit,” the good-faith exception applies to this case, and Bolden is not entitled to relief.
Accordingly, I concur in the result.
BURKE, J., concurs.

. Judge Welch also characterizes my reliance on Leon — and, in turn, my reliance on a majority of United States Circuit Courts of Appeal — as setting out the "the standard of review applicable in Bolden’s case.” 205 So.3d at 756 (emphasis added). To be clear, the good-faith exception is not a “standard of review”; rather, it is the controlling legal principle we must use in this case.